## UNIVERSAL CREDIT CO. v. WYATT.
### No. 2759.

Court of Civil Appeals of Texas. El Paso. Jan. 5, 1933.

Rehearing Denied Jan. 26, 1933.

Henry P. Edwards, of Dallas, for appellant.

J. Ontiveros Jordan, Russell M. Baker, and Caldwell, Gillen, Francis & Gallagher, all of Dallas, for appellee.

PELPHREY, C. J.

Appellee, on or about the 8th day of April, 1930, bought from the Tri-State Motor Company, of El Paso, Tex., a 1930, Ford sport roadster automobile. In connection with the purchase thereof, he agreed to pay the sum of $544 in sixteen monthly installments of $34 each, due on the 8th day of each succeeding month. Appellant about April 12th, 1930, became the owner and holder of the conditional sales contract executed by appellee, and on or about April 8, 1931, took possession of the automobile in the city of Dallas, Tex., claiming to be justified in so doing because of appellee's failure and refusal to pay $40 then delinquent.

Thereafter appellee, as plaintiff, brought this suit in the county court of Dallas county at Law, No. 1, to recover damages in the sum of $859, for the alleged wrongful conversion of the automobile valued at $395, certain personal property valued at $14, and for $450 alleged loss of commissions as a stock salesman which he claimed he would have earned with the aid of the use of the automobile. In this connection he alleged that appellant had full knowledge of the use to which he put the automobile and that he was unable to obtain another. Appellant answered by special exception, general demurrer, and general denial, and specially pleaded that on April 8, 1931, it was the holder of a chattel mortgage contract theretofore executed by appellee creating a chattel mortgage lien on the automobile to secure the payment of the balance of $544 on the purchase price, which expressly provided that, if plaintiff failed to pay the monthly installments due thereon in accordance with the terms of said contract, the holder of same should have the right to repossess and resell the automobile in satisfaction of the mortgage debt; that on said date appellee had failed by the sum of $40 to make the stipulated payments, and the entire unpaid balance of $200 had become due according to the contract, and that it had not converted appellee's automobile, but had, in the exercise of its rights as mortgagee, repossessed and resold the mortgaged car in satisfaction of the mortgage debt.

It further pleaded that the payments were payable at its Houston office, and that on February 4, 1931, through its Dallas office, it had collected the sum of $74 on accounts

being handled in its Houston office, $34 of which had been paid by appellee and $40 by a third party, one L. D. Turner; that through error appellant's Houston office applied the full $74 on appellee's contract; that on February 28, 1931, when in truth and in fact the sum of $68 was due on appellee's contract, it erroneously advised him that only $28 was due, collected said amount, and gave him a receipt showing his account paid to date; that immediately thereafter, to wit, on March 6, 1931, the error was discovered and appellee was 'advised thereof both by letter and personally; that appellee refused to pay the amount then delinquent, thereby causing the full amount to become due; and that, upon his refusal, appellant repossessed and resold the automobile.

Appellee filed a supplemental petition consisting of a general demurrer, a general denial, and specially denied that he was indebted to appellant in the sum of $40, on April 8, 1931, and further pleaded that appellant had estopped itself from repossessing the car under the mortgage by the issuance of the receipt to him on February 28th.

The issues submitted and the jury's answers thereto are:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that at the time the defendant credit company took possession of the automobile involved herein on April 8th, 1931, the plaintiff Wyatt was in default in his payment upon the same? Answer: No.

"Special Issue No. 2: What do you find from a preponderance of the evidence was the reasonable cash market value of the automobile involved herein on April 8th, 1931, at Dallas, Texas? Answer: $265.00.

"Special Issue No. 2a: What do you find from a preponderance of the evidence was the balance due and unpaid on said Ford Roadster Automobile at the time same was repossessed by the defendant herein on April 8th, 1931? Answer: $170.00.

"Special Issue No. 3: Do you find and believe from a preponderance of the evidence that the defendant before it took possession of the automobile involved herein, knew the use to which he, plaintiff, was putting said automobile? Answer: Yes.

"Special Issue No. 4: What do you find from a preponderance of the evidence was the loss of plaintiff's net earnings, if any, resulting solely directly and proximately from defendant's taking possession of the automobile involved herein on April 8, 1931? Answer: $50.00 per month.

"Special Issue No. 6: Do you find from a preponderance of the evidence that defendant, Universal Credit Company, notified plaintiff, Mack W. Wyatt, that said Ford Automobile was to be repossessed before doing so on or about April 8, 1931? Answer: No."

From a judgment in favor of appellee' for the sum of $445, this appeal is prosecuted.

Opinion.

Appellant's contentions are that, the evidence being undisputed on the question of appellee being in default at the time the automobile was repossessed by it, the court should have instructed a verdict in its favor; that the loss of the net earnings of appellee was not a proper measure of damage in a case of this character; that the evidence, failing to show that appellee could have used the car for the purpose of selling stock during the seven months, was insufficient to support the jury's finding on issue No. 4; that, the evidence showing that appellee would have incurred expense in the operation of the automobile, and there being no evidence as to the amount of such expense, the evidence was insufficient to support such findings; and that the judgment was erroneous because of a conflict between the findings on issues No. 1 and No. 2a.

■ That the evidence was not sufficient on the question of the net earnings lost by appellee we think there can be no question.

While there is evidence to show that appellee's earnings decreased after the automobile was repossessed by appellant, there is no evidence as to the expense of operating it in connection with his work. If his damage is to be based on his lost earnings, then, naturally, the expense he would have incurred in the use of the car should be deducted from the amount his earnings were decreased. Nor do we think his statement, made at the time the car was purchased, showing his total expenses, would form any basis upon which the jury could ascertain the amount to deduct from the decreased earnings so as to decide upon the net earnings lost.

■ Without entering into a discussion of the evidence 'as to whether appellee was in default at the time the car was taken by appellant, we think it justified the submission of that issue to the jury. The question as to the measure of damage presents a more difficult problem, but we have concluded that under the circumstances shown' the loss of net earnings could be recovered.

If it be established that appellant had knowledge of the use to which the car was being put by appellee, and that appellee had used reasonable means to secure another car to use in carrying on his sales, and had been unable to do so, then we see no reason why, under the rule that the injured party shall be compensated for the injury done, he should not recover for his lost earnings caused by appellant's action in taking the car, if taken wrongfully.

The proposition raised as to the conflict between the finding, if in fact there is a conflict, can be eliminated by having the jury find the

amount owing by appellee on the purchase price.

The case not being fully developed, we have concluded that the judgment should be reversed, and the cause remanded.