Opinion issued April 11, 2002






 







In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01161-CV






CLAUDIA PATRICIA RAMIREZ VELASQUEZ, CLAUDIA P. VELAZQUES
ESTATE, AKA CLAUDIA P. RAMIREZ VELAZQUES ESTATE, AKA CLAUDIA
P. ZAMUDIO, AKA PATRICIA ZAMUDIO, MIGUEL H. ZAMUDIO, AKA
JESUS HERMIDA ZAMUDIO, AKA JESUS M. HERMIDA, AKA JESUS
ZAMUDIO HERMIDA, AKA MIGUEL ZAMUDIO, AKA JESUS HERMIDA,
AKA CONSORCIO SAN MIGUEL, AKA ZAMUDIO BROTHERS CORP.,
Appellants


V.


KWTJV, INC., Appellee






On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 98-55126






O P I N I O N


 In a bench trial, the court rendered judgment for appellee, KWTJV, Inc.
(KWTJV), in the amount of $37,500 on its claims relating to the breach of a real
estate contract and $10,000 for attorney's fees. Appellants challenge the factual
sufficiency of the evidence. We affirm.

Background

 The appeal centers on whether a sales contract amendment creating a new
closing date was valid. On August 8, 1998, KWTJV, a real estate investment
business, entered into a contract with Claudia Patricia Ramirez Velasquez
(Velasquez), one of the appellants, to purchase her home for $310,000. Velasquez
was behind on her mortgage payments and facing other financial problems at the
time. The original contract listed September 30, 1998, as the closing date. The sale
did not close by that date because, according to KWTJV, there were previously
undisclosed repair problems with the house, no verification of a required termite
treatment was provided, and KWTJV was concerned because the title was listed in
the name of Velasquez's estate. The parties, however, continued to communicate
after September 30th had passed. Both sides testified that they wanted to close the
sale while the other side kept delaying. 

 On October 24, 1998, a written amendment to the contract was executed
changing the closing date to November 30, 1998. Velasquez alleged at trial that her
signature was forged on this document. KWTJV president John Beaird, however,
testified that he witnessed Velasquez sign the extension in her home. 

 Then on November 2, 1998, a second contract amendment was executed. This
amendment stated that the seller would issue the buyer a $1,250 credit at closing. 
Velasquez does not allege that this document was forged. This agreement was
designed to compensate KWTJV for repairs that needed to be made to the home. 

 According to KWTJV, it was then ready to close on several occasions before
November 30th, but was told by Velasquez and others that she had no intention of
closing. Miguel Zamudio, Velasquez's husband, (1) testified, without objection, that in
the second or third week of November, Velasquez told KWTJV's president, "If you
cannot close on the house tomorrow, that's it. I can't wait any longer." The sale was
never made. 

 KWTJV intended to sell the property to John Beaird's mother-in-law for
$474,200 after closing with Velasquez. KWTJV brought this suit alleging an
anticipatory breach of contract, breach of contract, fraud, and interference with a
contractual relationship. Velasquez brought a counterclaim for the lost profit she
would have received from the sale. The court rendered judgment for KWTJV and
denied Velasquez's counterclaim. Sanctions were also assessed against appellants
for a failure to appear in court during the course of the trial, but the sanctions are not
appealed. Findings of fact and conclusions of law were not requested. 

Analysis

 In two points of error, appellants contend that the trial court erred in finding,
against the preponderance and great and sufficient weight of the evidence, that the
contract was breached. We construe this as an attack on the factual sufficiency of the
evidence. Appellants contend there was no breach because the time to perform the
contract had expired, and the closing date amendment was a forgery. 

Standard of Review

 Because findings of fact were neither filed nor requested, the judgment of the
trial court implies all necessary findings of fact to support it. See Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). Factual sufficiency of the
implied findings may still be challenged upon appeal. See id. at 84. An appellate
court will apply the same standard of review to sufficiency challenges of implied
findings as it applies to the review of jury findings. See id.; Herter v. Wolfe, 961
S.W.2d 1, 3 (Tex. App.--Houston [1st Dist.] 1995, writ denied). When factual sufficiency of the evidence is challenged, we consider all the
evidence, both in support of and contrary to the challenged implied finding, and
uphold the implied finding unless it is against the great weight and preponderance of
the evidence so as to be manifestly unjust. Ryan v. Abdel-Salam, 39 S.W.3d 332, 335
(Tex. App.--Houston [1st Dist.] 2001, pet. denied). The trial court, as finder of fact,
alone judges the credibility of the witnesses and the weight to be given their
testimony. Nordstrom v. Nordstrom, 965 S.W.2d 575, 580-81 (Tex. App.--Houston
[1st Dist.] 1997, pet. denied).

Validity of the Contract Amendment 

 It is undisputed that a valid sales contract existed between the parties. The key
issue on appeal is whether the closing date amendment was valid. (2) The amendment
bore the signatures of Velasquez and "Robert Mack V.P." for KWTJV. 

 Appellants first contend that the amendment is invalid because it was
purportedly signed after the contract's stated closing date of September 30, 1998. 
The contract stated, "If either party fails to close this sale by the Closing Date, the
non-defaulting party will be entitled to exercise the remedies contained in Paragraph
15." The remedies available under Paragraph 15 were (1) terminating the contract
and receiving the earnest money or (2) suing for specific performance or other legal
relief. Neither party exercised these options after the original closing date passed
before executing the closing date amendment. The contract did not state that failure
to close by the closing date would automatically terminate the contract.

 The signed amendment document demonstrates a mutual agreement and
acknowledges that consideration was given. (3) Thus, assuming the amendment was
properly signed by both parties, it was a valid amendment to the existing sales
contract. See Hill v. Heritage Res., Inc., 964 S.W.2d 89, 113 (Tex.App.--El Paso
1997, pet. denied) (noting that a valid modification requires both new consideration
and the same mutuality present in the original contract).

 Appellants contend, however, that the signature of Velasquez was forged. 
KWTJV asserts that forgery is an affirmative defense that must be pleaded or else is
waived. We disagree. Generally, affirmative defenses do not rebut any factual
propositions asserted in the plaintiff's case; rather, they open the way for the
defendant to bring forward evidence establishing an independent reason why the
plaintiff may not recover. Cook Composites, Inc. v. Westlake Styrene Corp., 15
S.W.3d 124, 137 (Tex.App.--Houston [14th Dist.] 2000, pet. dism'd) (emphasis in
original). Here, appellants claim of a forged signature is an attempt to rebut the
element of mutuality needed for a valid modification to exist. We, therefore, will
examine the evidence of a forged signature. 

 Velasquez repeatedly testified that she did not sign the closing date
amendment. Also, a title company employee testified that Velasquez was surprised
when she was shown the amendment and denied signing it. Contrarily, John Beaird
testified that he personally witnessed Velasquez sign the document. Although
appellants noted that Beaird did not sign the amendment that he claims he witnessed
Velasquez sign, Beaird testified that other employees often sign on behalf of KWTJV. 
A bankruptcy document that Velasquez testified she personally signed was also
introduced by KWTJV, and the judge was requested to compare this signature to the
signature on the amendment. No expert testimony was presented.

 As the fact finder, the court was entitled to accept or reject any testimony. 
Nordstrom, 965 S.W.2d at 580-81. The court was certainly entitled to believe Beaird
and not believe Velasquez. We do not find the court's implied findings that the
closing date amendment was signed by Velasquez to be against the great weight and
preponderance of the evidence so as to be manifestly unjust. 

 We overrule both points of error. 

 We affirm the judgment of the trial court. 



 Michael H. Schneider

 Chief Justice


Panel consists of Chief Justice Schneider and Justices Taft and Radack. 

Do not publish. Tex. R. App. P. 47.
1. The house was purchased before Velasquez married Zamudio, and it was
treated as her separate property by the couple.
2. The amendment was admitted into evidence, and its full text is as follows:


AMENDMENT TO EARNEST MONEY CONTRACT

DATED 08-08-1998 BETWEEN

Claudia Patricia Rmirez (sic) Velasquez (Seller) and KWTJV, Inc. (Buyer)

[ADDENDUM NUMBER 1]


 The following terms shall be substituted in the Earnest
Money Contract indicated above for which the Seller shall
acknowledge consideration given:

 The closing date in the original contract shall
be changed to read November 30, 1998.


 All other terms and conditions shall remain the same.


 Dated this the 24th Day of October, 1998.
3. Appellants do not question the existence or sufficiency of the
acknowledged consideration.